United States District Court
Southern District of Texas
**ENTERED**
December 07, 2015
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | § | |
|---|---|---|
| IN RE PLAINS ALL AMERICAN PIPELINE, | § | Lead Case |
| L.P. SECURITIES LITIGATION | § | No H:15-cv-02404 |
| | § | |

**MEMORANDUM AND ORDER APPOINTING LEAD PLAINTIFF AND APPROVING LEAD COUNSEL**

The putative class members in this federal securities action are investors in Houston-based Plains All American Pipeline, LP ("Plains"), a crude-oil pipeline operator. On May 19, 2015, Line 901—a 10.6-mile long Plains pipeline across the Santa Barbara, California coast—ruptured and released crude oil. The plaintiffs allege that Plains made misrepresentations about the measures taken to prevent such an occurrence before the spill and after the spill about the extent of the release. They seek damages for the decline in the value of Plains stock. The defendants are Plains; Plains Holdings, a limited partnership formed to own an interest in Plains's general-partner and incentive-distribution rights; officers and directors at the two companies; and underwriters associated with public offerings of the shares.

Five plaintiffs moved to be appointed as lead plaintiff and for their chosen counsel to be approved as lead counsel. (Docket Entry Nos. 8, 11, 18, 19, 22). The court heard argument on the motions. At the hearing, the court dismissed as moot the Public Pension Funds' withdrawn motion and denied the Houston Municipal Employees Pension System's motion. (Docket Entry No. 56). The court took under advisement the motions filed by Inter-Marketing Group USA, Inc. ("Inter-Marketing Group"), IAM National Pension Fund ("IAM"), and the Pennsylvania State Employees' Retirement System (the "Pennsylvania System").

1

Based on the pleadings, the motions and responses, and the applicable law, the court now grants IAM's motion for appointment of lead plaintiff and approval of lead counsel and denies the motions filed by the Inter-Marketing Group and the Pennsylvania System. The reasons are explained below.

**I.     The Standard for Determining "the Most Adequate Plaintiff" Under the PSLRA**

Under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Pub. L. No. 104-67, 109 Stat. 737, the district court must appoint the lead plaintiff "[a]s soon as practicable" after ruling on a motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B)(ii). On October 20, 2015, the court granted the plaintiffs' motions to consolidate this case with Case No. 4:15-cv-2540. (Docket Entry No. 30). The PSLRA requires notice within 20 days after the plaintiff files a complaint that informs class members of their right to move for lead-plaintiff status within 60 days after the notice was published. 15 U.S.C. § 78u-4(a)(3)(A)(i). The parties do not dispute the adequacy of the notice.

In appointing the lead plaintiff,

> the court shall consider any motion made by a purported class member . . . , including any motion by a class member who is not individually named as a plaintiff in the complaint or complaints, and shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter in this paragraph referred to as the "most adequate plaintiff") in accordance with this subparagraph.

*Id.* § 78u-4(a)(3)(B)(i). "[T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that":

> (aa)   has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
>
> (bb)   in the determination of the court, has the largest financial interest in the relief sought by the class; and

2

   (cc)  otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

. . .

[This presumption] may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff

   (aa)  will not fairly and adequately protect the interests of the class; or

   (bb)  is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

*Id.* § 78u-4(a)(3)(B)(iii)(I)–(II). Discovery on this issue may be conducted only if "the plaintiff first demonstrates a reasonable basis for a finding that the presumptively most adequate plaintiff is incapable of adequately representing the class." *Id.* § 78u-4(a)(3)(B)(iv). The most adequate plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." *Id.* § 78u-4(a)(3)(B)(v).

## II. Which of the Plaintiffs Is Presumed "the Most Adequate"?

For the presumption to apply, "the lead plaintiff or plaintiffs must possess not only the largest financial interest in the outcome of the litigation, but must also meet the requirements of Federal Rule of Civil Procedure 23." *In re Waste Management, Inc. Sec. Litigation*, 128 F. Supp. 2d 401, 411 (S.D. Tex. 2000).

### A. The Largest Financial Interest

Courts in this district consider the four *Lax* factors to determine who has the largest financial interest. The factors are "(1) the number of shares purchased, (2) the number of net shares purchased, (3) the total net funds expended by the plaintiff(s) during the class period, and (4) the approximate losses suffered by the plaintiff(s)." *Id.* at 414 (citing *Lax v. First Merchants*

3

*Acceptance Corp.*, No. 97-c-2715, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997)). It is undisputed that IAM has the largest financial interest in the relief the putative class seeks. IAM purchased the largest number of total and net shares, spent the largest amount of total net funds, and suffered the largest loss.[1] *Compare* (Docket Entry No. 18, Ex. C), *with* (Docket Entry No. 9); (Docket Entry No. 49, Ex. 1); *see also* (Docket Entry No. 50 at p. 10).

The Pennsylvania System argues that it should nonetheless be appointed as co-lead plaintiff with IAM. The argument is based on differences between Plains stock and Plains Holdings stock. The Pennsylvania System has the largest financial interest in the relief sought on behalf of investors in Plains Holdings, (Docket Entry No. 48 at 9–10), and argues that a co-lead plaintiff is necessary to ensure that both sets of investors are adequately represented. But IAM invested in, and lost money on, shares of both Plains and Plains Holdings during the class period. The present record shows no basis to infer that both IAM and the Pennsylvania System are needed as lead plaintiffs for adequate representation. This court rejected a similar argument for co-lead plaintiff appointment in *In re Enron Corp. Securities Litigation*, 206 F.R.D. 427 (S.D. Tex. 2002). As in *Enron*, the Pennsylvania System's call for subclasses may be "persuasive . . . at class certification, as well as for trial." *Id.* at 451. At this stage, however, "such divisions are [not] essential." *Id.*

At oral argument, the Pennsylvania System argued that *Enron* was different because it involved only one company, while Plains and Plains Holdings are distinct corporate entities. The Pennsylvania System submitted exhibits showing that the companies are interrelated but have some differences in employees and corporate structure. This is not a persuasive basis for distinguishing

---

[1] There are two methods for calculating losses: first in, first out ("FIFO") and last in, first out ("LIFO"). The movants' losses are the same under either measure.

4

*Enron*. Because the class relief sought encompasses losses from investments in both Plains and Plains Holdings, the losses are properly combined to determine the largest financial interest. As in *Enron*, the Pennsylvania System "may reurge or file new requests for subclasses and separate representatives" at the class-certification stage. *Id.* Until then, the differences between Plains and Plains Holdings provide no reason to appoint co-lead plaintiffs. *See Greenberg v. Bear Sterns & Co., Inc.*, 80 F. Supp. 2d 65, 70 (S.D.N.Y. 2000) ("When attempting to resolve who is the most adequate plaintiff to represent the class, the Court is of the view that the largest financial interest of the class should be considered, not the largest financial interest of separate sub classes."); *cf. In Re Century Business Servs. Sec. Litigation*, 202 F.R.D. 532, 536 (N.D. Ohio 2001) (plaintiffs "cannot simply define the class they seek to represent . . . [or] shrink the kingdom until they are king.").

The Pennsylvania System also argues that it has the "broadest" financial interest in the relief sought because it also lost money on investments in Plains debt securities. (Docket Entry No. 48 at p. 11). It concedes, however, that "the debt securities are not included in the current definition of the class." (*Id.*). And the PSLRA question is not which party has the "broadest" financial interest, but which party has the "largest" financial interest.

Although the relative difference between the losses alleged by IAM and the Pennsylvania System—$500,000, or roughly 5 percent—is not great, the *Lax* factors show that IAM "has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### B. Does IAM Otherwise Satisfy the Requirements of Rule 23?

Because IAM has the largest financial interest, it is presumptively entitled to lead-plaintiff status unless it fails the requirements of Federal Rule of Civil Procedure 23.

#### 1. The Legal Standard Under Rule 23

The Rule 23(a) requirements are that:

(1)   the class is so numerous that joinder of all members is impracticable;

(2)   there are questions of law or fact common to the class;

(3)   the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4)   the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23.  The most relevant requirements under the PSLRA are adequacy and typicality. *Enron*, 206 F.R.D. at 441.  "Although the inquiry at this stage of the litigation in selecting the Lead Plaintiff is not as searching as the one triggered by a subsequent motion for class certification, the proposed Lead Plaintiff must make at least a preliminary showing that it has claims that are typical of those of the putative class and has the capacity to provide adequate representation for those class members."  *Id.*

"The typicality requirement focuses less on the relative strengths of the named and unnamed plaintiffs' cases than on the similarity of the legal and remedial theories behind their claims." *Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290, 297 n.32 (5th Cir. 2001) (quoting *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986)) (internal quotation marks omitted); *see also Woodard v. Andrus*, 272 F.R.D. 185, 191 (W.D. La. 2010) ("The test for typicality is not demanding and it focuses on the general similarity of the legal and remedial theories behind the plaintiffs' claims." (citing *Shipes v. Trinity Indus.*, 987 F.2d 311, 316 (5th Cir. 1993); *Jenkins*, 782 F.2d at 472)).  The class representative's claims must "have the same essential characteristics of those of the putative class."  *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001), *abrogated on other grounds by M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 839–41 (5th Cir. 2012).

6

"The adequacy requirement mandates an inquiry into the zeal and competence of the representatives' counsel and the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees." *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 (5th Cir. 2001) (alterations omitted) (quotation marks omitted). It also "serves to uncover conflicts of interest between named parties and the class they seek to represent." *In re Deepwater Horizon*, 785 F.3d 1003, 1015 (5th Cir. 2015) (quotation marks omitted).

"The typicality and adequacy inquiries are related in this context, as a party's lack of the same essential characteristics of those of the putative class James may result in conflicts between the named plaintiffs' interests and the class members' interests." *In re BP Sec. Litigation*, 758 F. Supp. 2d 428, 437 (S.D. Tex. 2010) (citations omitted) (quotation marks omitted). "For example, if such a party were appointed lead plaintiff, there would be potential conflicts between the party and the other class members in drafting the consolidated complaint, in defending a motion to dismiss, and in conducting discovery—the party would have an interest in pursuing its specific claims to the potential exclusion of other class members' claims." *Id.*

### 2. Analysis

The record shows that IAM lost money because it purchased Plains and Plains Holdings securities during the class period. Although not identical, IAM's legal and remedial theories have the same essential characteristics as the class claims. This is enough for typicality.

The Pennsylvania System argues that IAM's claims are not typical because it did not purchase securities during any of the public offerings that give rise to the Securities Act of 1933 claims. "Nothing in the PSLRA indicates that district courts must choose a lead plaintiff with standing to sue on every available cause of action." *Hevesi v. Citigroup, Inc.*, 366 F.3d 70, 82 (2d

Cir. 2004). "[I]t is inevitable that, in some cases, the lead plaintiff will not have standing to sue on every claim." *Id.* Courts reject a "requirement that a different lead plaintiff be appointed to bring every single available claim" because that "would contravene the main purpose of having a lead plaintiff—namely, to empower one or several investors with a major stake in the litigation to exercise control over the litigation as a whole." *Id.* at 82 n.13. And, in any event, this argument does not justify appointing the Pennsylvania System, because neither IAM nor the Pennsylvania System has standing to assert every claim advanced in the complaint. (Docket Entry No. 50 at p. 13 & n.11).

At oral argument, the Pennsylvania System relied heavily on *In re BP Securities Litigation*, 758 F. Supp. 2d 428 (S.D. Tex. 2010). That case provides no support. The *BP* court considered a motion for appointment of lead plaintiff by state retirement funds in New York and Ohio. The case involved allegations of securities fraud relating to the April 2010 Deepwater Horizon oil spill. *Id.* at 432. The court reasoned that the New York and Ohio funds had a "theory of the case [that] differ[ed] significantly from that of [the other plaintiffs]." *Id.* at 437. The New York and Ohio funds alleged that BP made fraudulent statements over a five-year period, from 2005 to after the April 2010 spill. The other plaintiffs' claims focused on "the thirteen months leading up to the Deepwater Horizon explosion." *Id.* at 438. During this 13-month window, the New York and Ohio funds were net sellers of BP stock, unlike the other plaintiffs, who were investors in BP during this period. *Id.* The court's concern was that the "New York [and] Ohio [funds] might not have an interest in vigorously pursuing the claims central to the [other plaintiffs'] shorter class period, in favor of emphasizing arguments about fraud based on conduct before and after the [other plaintiffs'] thirteen-month window." *Id.* The court concluded that because the issues of the New York and

8

Ohio funds were outside of the other plaintiffs' 13-month class period, those funds would "present different legal theories than other plaintiffs." *Id.* As a result, the funds did not make a preliminary showing of typicality and adequacy and were not entitled to the most-adequate-plaintiff presumption. *Id.*

Unlike the New York and Ohio funds in *BP*, IAM does not have interests that are potentially different from, much less antagonistic to, the class interests. There is no reason to anticipate conflicts between IAM and the other plaintiffs in, for example, drafting the amended consolidated complaint or defending a motion to dismiss.[2]  *See id.* at 437.

The Pennsylvania System correctly observes that IAM's stock purchases were limited to the final eight months of the roughly two-year class period and suggests that these "late-in-the-class-period purchases raise questions about IAM's ability to vigorously and adequately pursue claims on behalf of the purchasers of Plains's securities throughout [the class period], and particularly during the earlier months of the class period." (Docket Entry No. 48 at p. 18–19). But at this stage, the Pennsylvania System has failed to identify, and the record does not show, any reason why IAM would not pursue claims throughout the entire class period or why asserting early-in-the-class-period claims would run counter to IAM's interests. "A lead plaintiff owes a fiduciary duty to the class," *Enron*, 206 F.R.D. at 448 n.18 (citing *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 549–50 (1949)), and "[d]ifferent interests need not necessarily constitute fatal conflicts," *id.* The record reflects no apparent conflicts and no inability or unwillingness by IAM or its counsel, Robbins

---

[2] There is no basis for distinguishing Plains shares from Plains Holdings shares at this time. The stock prices largely moved in tandem over the class period, even though Plains Holdings stocks had a steeper price drop after the spill. These differences are not material to the ability of one lead plaintiff and class counsel to clearly and adequately represent the interests of the class.

9

Geller Rudman & Dowd LLP, to pursue the class claims.

The Pennsylvania System argues that it would be the "most" adequate and typical lead plaintiff. "That the district court believes another plaintiff may be 'more typical' or 'more adequate' is of no consequence. So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job." *In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002). IAM satisfies the Rule 23 requirements and is entitled to the most-adequate-plaintiff presumption.

### III. Has the Presumption Been Rebutted?

The Pennsylvania System has not submitted any "proof" rebutting the presumption. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Nor has it moved to conduct discovery on this issue. *Id.* § 78u-4(a)(3)(B)(iv). The court finds that IAM is the most adequate plaintiff under the PSLRA.

### IV. Approval of Lead Counsel

The most adequate plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." *Id.* § 78u-4(a)(3)(B)(v). The court should not disturb the lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the [plaintiff] class." *Enron*, 206 F.R.D. at 441 (quotation marks omitted). "The adequacy of the putative class representative(s) and of plaintiffs' counsel should not be presumed, however, even in the absence of proof to the contrary; plaintiff bears the burden of demonstrating his and his counsel's adequacy." *Id.*

Robbins Geller meets the requirements for approval of lead counsel. Robbins Geller has submitted a detailed firm resume and attorney biographies. (Docket Entry No. 18, Ex. D). It has

10

also submitted its contingency-fee matrix, which the court has reviewed *in camera*. (Docket Entry No. 55). The record shows that Robbins Geller will adequately represent the putative class. IAM's choice of counsel is approved.

## V.     Conclusion

The court grants IAM's motion for appointment of lead plaintiff and approves Robbins Geller as lead counsel. (Docket Entry No. 18). The court denies Inter-Marketing Group's and the Pennsylvania State Employees' Retirement System's motions for appointment of lead plaintiff and approval of lead counsel. (Docket Entry Nos. 8, 11). The amended consolidated complaint must be filed by January 29, 2016, and the motion to dismiss by March 14, 2015. A reply brief is permitted, and the filings must be within the usual page limits.

SIGNED on December 7, 2015, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

11